**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MICHAEL GRAVELY,**<br>Plaintiff,<br><br>v.<br><br>**TEMPLE UNIVERSITY HOSPITAL, INC., d/b/a TEMPLE UNIVERSITY HOSPITAL, and TEMPLE UNIVERSITY HEALTH SYSTEM, INC.,**<br>Defendants. | Civil Action No.<br><br>**JURY TRIAL DEMANDED** |

# COMPLAINT

Plaintiff Michael Gravely ("Plaintiff"), by and through undersigned counsel, brings this action against Defendants Temple University Hospital, Inc. d/b/a Temple University Hospital, and Temple University Health System, Inc., ("Defendants") and alleges as follows:

## I. INTRODUCTION

1. This is an employment discrimination and retaliation action arising from Defendants' unequal assignment of physically demanding work to Plaintiff, a Black employee, as compared with a White coworker holding the same position. Defendants failed to correct the unequal treatment after Plaintiff complained, then escalated adverse and retaliatory treatment that ultimately forced Plaintiff to resign.

2. Plaintiff brings claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"); 42 U.S.C. § 1981 ("Section 1981"); the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 et seq.; and the Philadelphia Fair Practices Ordinance ("PFPO"), Phila. Code § 9-1101 et seq.

## II. JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction over Plaintiff's Title VII claims under 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5(f)(3).

4. This Court has supplemental jurisdiction over Plaintiff's related state and local claims under 28 U.S.C. § 1367 because those claims arise from the same nucleus of operative facts.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices occurred in Philadelphia, Pennsylvania, and Defendants maintain their principal relevant workplace in this District.

## III. PARTIES

6. Plaintiff Michael Gravely is a Black/African American man who resides in Philadelphia, Pennsylvania.

7. Defendant Temple University Hospital, Inc., d/b/a Temple University Hospital ("TUH"), operates Temple University Hospital in Philadelphia, Pennsylvania. Plaintiff's W-2 identifies his employer as "Temple University Hospital." TUH employed Plaintiff at all relevant times.

8. Defendant Temple University Health System, Inc. ("TUHS") is the parent of TUH.

9. Upon information and belief, TUHS shared or exercised control with TUH over material terms and conditions of Plaintiff's employment, including his supervision, work assignments, performance management, discipline, and Human Resources matters. Managers who supervised and disciplined Plaintiff identified themselves as TUHS management while performing those functions at Temple University Hospital. Accordingly, TUH and TUHS jointly employed Plaintiff.

## IV. ADMINISTRATIVE EXHAUSTION

10. Plaintiff timely filed Charge No. 530-2025-09185 with the EEOC. The Charge identified "Temple University Hospital" as the Respondent and was dual-filed with the Pennsylvania Human Relations Commission.

11. The EEOC also provided Temple University Health System with notice of Plaintiff's Charge and the administrative proceedings. Thus, both Defendants had notice of Plaintiff's allegations during the EEOC proceedings.

12. On July 9, 2026, the EEOC issued a Letter of Determination finding reasonable cause to believe that Plaintiff had been subjected to discriminatory assignments, harassment, and constructive discharge because of race and had been retaliated against for protected complaints. A true and correct copy of this Letter is attached hereto as Exhibit A.

13. The EEOC then issued Plaintiff a Notice of Right to Sue dated July 16, 2026. Plaintiff commenced this action within ninety days after receipt of that notice.

14. Plaintiff has satisfied all administrative prerequisites applicable to his PHRA and PFPO claims.

## V. FACTUAL ALLEGATIONS

15. Defendant TUH hired Plaintiff on or about September 18, 2018 as an inpatient Pharmacy Technician at its Jeanes Campus.

16. Plaintiff performed his duties satisfactorily and had no material disciplinary history before the events alleged below.

17. On or about February 4, 2025, Plaintiff transferred to TUH's Main Campus as a Pharmacy Inventory Control Technician.

18. Plaintiff's responsibilities included receiving and stocking daily pharmacy drug supplies, maintaining inventory levels and expiration dates, replenishing carousel machines, and responding to interdepartmental requests.

19. Plaintiff worked alongside Kimberly Corley, a Caucasian woman who held the same position and performed materially similar job duties.

20. Plaintiff and Corley reported into the same management structure and were subject to the same standards.

21. Soon after Plaintiff began at the Main Campus, manager Lorraine Fehrle divided work unequally between Plaintiff and Corley.

22. Fehrle repeatedly directed Plaintiff to unload, move, and re-shelve heavier products and assigned him to the more physically demanding carousel and replenishment work.

23. By contrast, Corley was disproportionately assigned desk, telephone, ordering, unit-contact, courier-coordination, and lighter restocking tasks.

24. The unequal division of labor increased Plaintiff's physical burden and exposed him to greater ergonomic and safety risks than his White counterpart.

25. Rolling shelves used in Plaintiff's work had broken wheels, making the heavy stocking work more difficult and hazardous.

26. On or about April 10, 2025, Plaintiff attempted to submit a maintenance request concerning the broken wheels.

27. Plaintiff discovered that he had not been granted access to the Main Campus maintenance portal, although, upon information and belief, Corley had the access necessary to submit such requests.

28. Plaintiff requested Main Campus access from Fehrle. Fehrle did not provide it and instead cancelled Plaintiff's remaining Jeanes Campus access.

29. The shelves remained unrepaired while Plaintiff continued receiving unusually large quantities of heavy products and storing overflow inventory.

30. Plaintiff developed back pain and requested a back brace, but the underlying work and safety disparity remained uncorrected.

31. On or about June 19, 2025, while Plaintiff was finishing a task at a workstation, Fehrle demanded that he vacate the computer for another supervisor.

32. When Plaintiff explained that he needed only a moment to finish, Fehrle reached across his body and face, logged him off without consent, and publicly humiliated him in front of coworkers.

33. On or about June 20, 2025, Plaintiff submitted an internal complaint to Human Resources describing the unequal treatment and the June 19 incident and identifying witnesses.

34. Plaintiff's complaint expressly opposed race discrimination and disparate treatment.

35. Defendants did not promptly communicate with Plaintiff concerning a meaningful investigation or interim corrective measures.

36. In or around mid-July 2025, Human Resources informed Plaintiff that his complaint was unsubstantiated but did not provide a meaningful explanation of the investigation or findings.

37. At a subsequent meeting with Fehrle and Pharmacy Director Matthew Baiocchi, Plaintiff again complained that he was assigned the heavy receiving, unloading, restocking, and unit-dose prepacking work while Corley received ordering, telephone, unit-contact, and courier-coordination work.

38. Plaintiff explained that the unequal tasking also threatened to bias any performance evaluation against him; however, management minimized the disparity and did not correct the assignment practices.

39. On or about August 28, 2025, Plaintiff again complained to Human Resources that discrimination and retaliation were continuing. He advised Human Resources that he intended to file a charge with the EEOC.

40. After Plaintiff continued complaining about discrimination and retaliation, Defendants subjected him to increased scrutiny and repeated accusations concerning his performance.

41. Plaintiff later complained that management continued to change and add duties. He also complained that management gave conflicting instructions and then criticized him for failing to meet the changing expectations.

42. Plaintiff's union advised management that the newly imposed daytime cycle-count process would cause substantial delays and disruption and recommended that the work instead be performed on the overnight shift.

43. Nevertheless, management continued to scrutinize Plaintiff's performance and subjected him to another Just Culture proceedings concerning alleged performance deficiencies that Plaintiff disputed.

44. On November 6, 2025, Defendants issued Plaintiff a Corrective Action/Discipline Report and placed him on a sixty-day Performance Improvement Plan based on disputed performance allegations involving duties and expectations that had been the subject of Plaintiff's prior complaints.

45. The Performance Improvement Plan imposed detailed performance requirements and warned that failure to satisfy those requirements, or to sustain them after completion of the Plan, would result in progressive disciplinary action.

46. Plaintiff disputed the accusations underlying the discipline and declined to sign the Corrective Action/Discipline Report.

47. In light of the continuing discriminatory treatment, Defendants' failure to remedy his complaints, the escalating accusations and scrutiny, and the imposition of formal corrective

action threatening progressive discipline, Plaintiff reasonably concluded that Defendants were creating a record that would lead to his discharge.

48. On November 11, 2025, five days after Defendants imposed the Performance Improvement Plan, Plaintiff gave notice of his resignation. His employment ended on December 6, 2025.

49. Under these circumstances, Defendants made Plaintiff's working conditions so intolerable that a reasonable employee in his position would have felt compelled to resign.

50. On July 9, 2026, after reviewing the statements and documents submitted to it, the EEOC found reasonable cause to believe that Plaintiff had been subjected to discriminatory assignments, harassment, and constructive discharge.

## VI. LEGAL COUNTS

### COUNT I - TITLE VII RACE DISCRIMINATION

51. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

52. Plaintiff is a member of a protected class because he is Black/African American.

53. Plaintiff was qualified for his position and performed his job satisfactorily.

54. Defendants subjected Plaintiff to less favorable terms and conditions of employment, including disproportionately heavy and physically demanding assignments, denial of workplace access and support, public humiliation, heightened scrutiny, and constructive discharge.

55. A Caucasian coworker holding the same position received more favorable assignments and treatment.

56. The circumstances support an inference that race was a motivating factor in Defendants' actions.

57. Defendants' conduct violated Title VII and caused Plaintiff economic loss, emotional distress, humiliation, and other damages.

## COUNT II - TITLE VII HOSTILE WORK ENVIRONMENT

58. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

59. Plaintiff was subjected to unwelcome conduct, including persistent unequal assignments, disregard of workplace hazards disproportionately affecting him, public humiliation, dismissive responses to his complaints, and escalated scrutiny.

60. The conduct occurred because of Plaintiff's race and was sufficiently severe or pervasive, viewed cumulatively, to alter the terms and conditions of his employment.

61. The conduct was objectively hostile and was subjectively experienced by Plaintiff as hostile and abusive.

62. Defendants knew or should have known of the conduct through Plaintiff's repeated complaints but failed to take prompt and effective corrective action.

63. Defendants' conduct violated Title VII and caused Plaintiff damages.

## COUNT III - PHRA RACE DISCRIMINATION AND HOSTILE WORK ENVIRONMENT

64. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

65. Defendants discriminated against Plaintiff because of race and subjected him to a hostile work environment in violation of the PHRA.

66. Defendants are liable for the acts of their managers, supervisors, and agents and for failing to remedy discrimination after receiving notice.

67. As a direct and proximate result, Plaintiff suffered economic and noneconomic damages.

**COUNT IV – RETALIATION (Title VII, PHRA)**

68. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

69. Plaintiff engaged in protected activity by complaining internally about race discrimination, unequal assignments, and a racially hostile work environment.

70. Defendants and the relevant decisionmakers knew of Plaintiff's protected activity.

71. After Plaintiff complained, Defendants escalated their scrutiny and disciplinary processes. Defendants subjected Plaintiff to another Just Culture proceeding, issued formal corrective action, and placed him on a Performance Improvement Plan threatening progressive discipline. The escalating treatment ultimately caused Plaintiff's constructive discharge.

72. The temporal relationship between Plaintiff's complaints and the escalation of adverse treatment, together with the surrounding circumstances, supports a causal connection.

73. Defendants' retaliation violated Title VII and caused Plaintiff damages.

74. Plaintiff opposed practices forbidden by the PHRA and participated in protected internal complaint activity.

75. Defendants retaliated against Plaintiff because of that protected activity.

76. As a direct and proximate result, Plaintiff suffered economic and noneconomic damages.

**COUNT V - PFPO RACE DISCRIMINATION, HOSTILE WORK ENVIRONMENT AND RETALIATION**

77. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

78. Defendants subjected Plaintiff to race discrimination, a hostile work environment, and retaliation in violation of the PFPO.

79. As a direct and proximate result, Plaintiff suffered economic and noneconomic damages.

**COUNT VI - RACE DISCRIMINATION AND RETALIATION (Section 1981)**

80. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

81. Plaintiff is Black and is entitled under Section 1981 to the same right to make and enforce contracts as is enjoyed by White persons.

82. Plaintiff's employment relationship with Defendants constituted a contractual relationship within the meaning of Section 1981.

83. Section 1981 protects the performance, modification, and termination of contracts, as well as the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

84. Defendants intentionally subjected Plaintiff to less favorable terms and conditions of employment because of his race.

85. Among other things, Defendants repeatedly assigned Plaintiff heavier and more physically demanding duties while assigning lighter, administrative, telephone, ordering, and coordination duties to a similarly situated White employee who held the same position.

86. Defendants also denied Plaintiff workplace access and privileges afforded to similarly situated White employees, subjected him to harassment and humiliation, failed to remedy his complaints of racial discrimination, and subjected him to heightened scrutiny and adverse employment processes.

87. Plaintiff complained to Defendants' management and Human Resources that he was being subjected to unequal assignments, racially disparate treatment, and a racially hostile work environment.

88. Plaintiff's complaints constituted protected opposition to race discrimination prohibited by Section 1981.

89. After Plaintiff made those complaints, Defendants subjected him to increasingly adverse working conditions.

90. Defendants took those actions because Plaintiff complained about race discrimination and sought to enforce rights protected by Section 1981.

91. Defendants' discriminatory and retaliatory conduct materially altered the terms and conditions of Plaintiff's employment and ultimately caused his constructive discharge.

92. But for Plaintiff's race, Defendants would not have subjected him to the discriminatory assignments, unequal terms and conditions, harassment, and constructive discharge alleged herein.

93. But for Plaintiff's protected complaints concerning race discrimination, Defendants would not have subjected him to retaliation and the resulting adverse employment actions.

94. Defendants acted intentionally and with malice or reckless indifference to Plaintiff's federally protected rights.

95. As a direct and proximate result of Defendants' violations of Section 1981, Plaintiff suffered lost wages and benefits, emotional distress, humiliation, inconvenience, loss of enjoyment of life, and other economic and noneconomic damages.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants and award:

A. A declaration that Defendants violated Title VII, the PHRA, Section 1981 and the PFPO;
B. Back pay, lost benefits, and other economic losses, with prejudgment interest;
C. Reinstatement, front pay or other appropriate equitable relief in lieu of reinstatement;
D. Compensatory damages for emotional distress, humiliation, inconvenience, and loss of enjoyment of life;
E. Punitive damages to the extent permitted by law;
F. Reasonable attorneys' fees and costs;
G. Prejudgment and post-judgment interest; and
H. Such other legal and equitable relief as the Court deems just and proper.

## VIII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

s/ *Kay Hennessy Seven*

___________________________

Kay Hennessy Seven, Esquire
Attorney ID 77262
101 Lindenwood Drive, Suite 225
Malvern, PA 19355
Telephone: (484) 875-3111
Facsimile: (484) 713-5185
kay@hennessylawfirm.com
*Counsel for Plaintiff*

September 3, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**MICHAEL GRAVELY,**
Plaintiff,

v.

**TEMPLE UNIVERSITY HOSPITAL, INC., d/b/a TEMPLE UNIVERSITY HOSPITAL, and TEMPLE UNIVERSITY HEALTH SYSTEM, INC.,**
Defendants.

Civil Action No.

**JURY TRIAL DEMANDED**

## VERIFICATION

I, Michael Gravely, hereby verify that I am the Plaintiff in the above matter and under penalty of perjury applicable under the laws of the United States that the factual averments in the attached Complaint are true and correct to the best of my knowledge, information, and belief.

ID T5SK1MSWDSaZnpH6kqvwG8n8

________________________________
Michael Gravely

9/3/2026